

EDWARD A. FRIEDMAN
efriedman@fklaw.com
212.833.1102

October 18, 2017

BY ECF

Hon. Jesse M. Furman
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Centre Street, Room 2202
New York, NY 10007

> Re: *U.S. Bank National Association v. Windstream Services, LLC*,
> Docket No. 17 Civ. 7857 (JMF) (S.D.N.Y.)

Dear Judge Furman:

      We represent plaintiff-counterclaim defendant U.S. Bank National Association, solely in its capacity as indenture trustee (the "Trustee") for Windstream Services' 6 3/8% senior notes due 2023 (the "Notes").  We write in response to the letter filed yesterday by defendant-counterclaimant Windstream Services, LLC ("Services"), in which Services states that it intends to move for summary judgment and in the alternative for a preliminary injunction enjoining the Trustee and counterclaim co-defendant Aurelius Capital Master, Ltd. ("Aurelius") "from effecting an Event of Default pending a final determination of this action on the merits."  Tellingly, Services opposes all discovery prior to the Court's ruling on the proposed motion.

      The Trustee believes the proposed motion — even with fulsome discovery, and certainly without it — would lack merit and simply forestall the resolution of the underlying dispute.  Because the Trustee seeks an expeditious adjudication of the merits, the Trustee urges instead that fulsome discovery proceed with alacrity and that a trial be held at the court's earliest convenience.  Nonetheless, if Services insists on going forward with its motion, the Trustee will cooperate and agree to an expedited briefing schedule, provided that the Trustee receives correspondingly expedited discovery, and that certain minor but important adjustments be made to the proposed briefing schedule.  We respectfully submit that there is absolutely no legal basis for the course proposed by Services — expedited motion practice without affording the Trustee discovery.

**Factual Background**

      Through its subsidiaries, Services provides regulated telecommunications services (primarily landline phone and internet services) in numerous states.  In this action, the Trustee and Services each seek a declaratory judgment as to whether a multi-billion dollar financing transaction violated a restrictive covenant contained in the indenture governing the

The Hon. Jesse M. Furman				- 2 -					October 18, 2017

Notes.  That covenant prohibits Services or any of its "Restricted Subsidiaries" from transferring and then leasing back assets unless three conditions are met:  the cash proceeds must be at least equal to the fair market value of the transferred assets; the proceeds must be applied to certain specified uses; and the resulting rent liability (referred to in the indenture as "Attributable Debt") cannot cause Services' total financial leverage to exceed a specified limit.

In the transaction at issue here, subsidiaries of Services that are regulated telecom providers transferred $7-8 billion of their telecom network assets — without which they would immediately cease operations — to Uniti Group, Inc. ("Uniti").  At the same time, Uniti entered into a master lease with Windstream Holdings, Inc. ("Holdings"), the ultimate parent of Services and the transferor subsidiaries, whereby Uniti leased back those same assets.  As its CFO admitted to regulators, Holdings was made the signatory to the master lease "just for administrative ease."  Indeed, as a mere holding company, Holdings does not have the regulatory authorization, the licensure, the personnel, the customers, or the myriad of other resources required to operate the transferred assets.  Uniti agreed that the subsidiaries have the right to use the assets and to discharge all rent and other obligations owed to it under the master lease.

Since then, the transferor subsidiaries have continued, without interruption, to use the transferred assets exactly as they had before the transaction.  Services' subsidiaries have also fulfilled substantially all of the contractual responsibilities ostensibly undertaken by Holdings under the master lease.  Services' subsidiaries have provided the funds for the rent payments due under the master lease, exceeding $650 million a year.  The subsidiaries have continued to maintain the assets.  In the first two years alone, the subsidiaries have expended hundreds of millions of dollars on capital improvements to improve the assets and to add entirely new network assets (all of which are transferred gratis to Uniti pursuant to the master lease).  The subsidiaries have paid for all taxes, utilities, and insurance on the assets.  And the subsidiaries have fulfilled the master lease's requirements that the transferred assets be used continuously for their primary intended use of providing telecommunications services and in compliance with all regulatory obligations — requirements that only the regulated subsidiaries, not the unregulated parent company Holdings, can possibly discharge.

In order to procure state utilities regulators' advance approval of the transaction, Holdings and the pertinent subsidiaries — through sworn testimony and statements of their CFO and general counsel — repeatedly assured the regulators that the transferred assets would be "leased" back *to the same regulated subsidiaries*, and that the subsidiaries would have the exclusive, long-term use and control of the assets, including the right to "sublease access to the system" to third parties.  Consistent with the economic reality and substance of the transaction, the subsidiaries' published financial statements report the subsidiaries as having "long-term lease obligations" related to the transaction of $5 billion (an amount that far exceeds the leverage limit permitted by the Indenture), and the subsidiaries as making "rent payments" under those obligations.

Services' position that there has been no default hinges on the proposition that simply by not having the subsidiaries be named signatories to the master lease they can

The Hon. Jesse M. Furman	- 3 -	October 18, 2017

sidestep the sale-leaseback covenant altogether.  At every turn, Services begs the obvious question — how, then, do the subsidiaries enjoy the exclusive long-term use of the assets?  The only plausible answer is that the subsidiaries are leasing the very assets they transferred — whether as de facto parties to the lease with Uniti or as sub-lessees from Holdings.  If so, it is clear that the transaction violated the covenant and severely prejudiced the holders of the Notes in precisely the fashion the covenant was designed to prevent.

**Proceedings to Date**

On September 21, 2017, Aurelius, as a beneficial holder of more than 25% of the principal amount of the outstanding Notes, delivered a written notice of default to Services based on the sale and leaseback transaction.  Under the indenture, Services has 60 days (i.e., until November 20, 2017) to cure the default, though Services has admitted no cure is possible (Counterclaim ¶ 17).  Absent a cure within that 60-day period, an event of default will automatically occur without further act by anyone.  This will entitle the Trustee or a 25% holder of the Notes to declare an acceleration of the Notes.

Contrary to Services' conclusory assertions, declaring an event of default is unlikely to cause any particular harm.  Just as it currently disputes the occurrence of the claimed defaults, Services will dispute the occurrence of any corresponding events of default or acceleration.  If, as Services insists, the defaults have not occurred, they cannot give rise to an event of default or acceleration.  No judgment requiring payment on the Notes could be entered unless and until the Court resolves the very dispute before it now.  The mere pendency of litigation is not irreparable harm.

Moreover, Services' own conduct belies its claimed need for emergency relief.  Services has squandered 26 days of the 60-day cure period with a combination of forum shopping and simple inaction.  Although Services quickly made the notice of default public, it waited eight days before seeking any judicial relief.  Then, on Friday afternoon, September 29, 2017, Services filed a complaint against the Trustee in Delaware state court — a most curious choice of forum given that New York was the only jurisdiction consented to in the indenture, and that the claimed basis for that court's personal jurisdiction over the Trustee was extremely dubious.  At that time, Services filed a one-page motion for a preliminary injunction with no supporting brief.  The Trustee was served with the Delaware complaint on October 2, 2017.  On October 4, 2017, the Trustee removed the action to federal court and filed a fully briefed motion to dismiss the Delaware action for lack of personal jurisdiction.  That same day, we wrote to Services' counsel, inviting them to discuss scheduling with us.  They ignored our invitation and took no further action in the litigation for another week.

Finally, to put the issue before the proper court, on October 12, 2017, the Trustee filed this action in this Court, seeking a declaratory judgment that there was a default under the indenture as asserted in the notice.  On Friday afternoon, October 13, 2017, Services withdrew its Delaware action, and filed an Answer and Counterclaims in this action against the Trustee and Aurelius.  In its answer, Services denied almost all of the key factual allegations of

The Hon. Jesse M. Furman                    - 4 -                    October 18, 2017

the Trustee's Complaint. Despite its conclusory claims of immediate and irreparable (indeed, existential) harm, Services filed no motion papers.

We therefore took the initiative and promptly advised Services of the discovery the Trustee would require if Services intended to seek expedited relief. On Monday, October 16, 2017, at 12:40 p.m., we wrote to Services' counsel, proposing tailored discovery requests for production within 20 days. At 5:40 p.m., we received from Services' counsel an email proposing an expedited briefing schedule for its proposed motion and refusing to provide any discovery. Despite the passage of more than two weeks since it moved the Delaware court for a preliminary injunction, Services stated that it wanted eight more days to file its opening brief.

In response, yesterday morning, October 17, 2017, we wrote to Services' counsel stating that the Trustee would agree to an expedited briefing schedule similar to Services' proposal but with a few reasonable modifications (including that Services file its long-delayed opening brief this week), provided, however, that the Trustee received appropriate discovery by October 30. Without responding to our email, Services then filed its letter to Your Honor, again proposing that it have yet another week to file its opening papers and stating (without explanation) that there should be no discovery.

**Requested Relief**

We respectfully submit that Services cannot seek an expedited hearing of a motion for summary judgment or preliminary injunction, while both denying the factual allegations of the Complaint *and* refusing to produce any discovery. Services' Answer disputes the most basic facts relevant to whether it violated the sale and leaseback covenant:

- Whether the transferor subsidiaries are "Restricted Subsidiaries" subject to the sale and leaseback restrictive covenant (*see* Compl. ¶ 26; Ans. ¶ 26);

- The identity of the transferor subsidiaries (*see* Compl. ¶ 43 n.4; Ans. ¶ 43);

- The fair market value of the transferred assets (*see* Compl. ¶ 45; Ans. ¶ 45);

- The identity of the Windstream entities that use the leased assets after the leaseback (*see* Compl. ¶¶ 51-52, 59; Ans. ¶¶ 51-52, 59);

- Whether Holdings is prohibited as a regulatory matter from using the leased assets (*see* Compl. ¶¶ 51, 59; Ans. ¶¶ 51, 59);

- The identity of the Windstream entities that pay the rent and discharge the other tenant obligations under the master lease (*see* Compl. ¶¶ 61, 63; Ans. ¶¶ 61, 63); and

- Whether, if a sale and leaseback occurred, the conditions of the restrictive covenant were met (*see* Compl. ¶¶ 70, 78, 82, 86; Ans. ¶¶ 70, 78, 82, 86).

The Hon. Jesse M. Furman - 5 - October 18, 2017

It is improper and unreasonable for Services to deny many of the material factual allegations of the Trustee's Complaint, and then ask for summary judgment or a preliminary injunction, presenting its preferred evidence while refusing to provide discovery. In those circumstances, the Court could not find an absence of a genuine issue of material fact or a likelihood of success on the merits, and courts in this Circuit have repeatedly frowned on such motions before a plaintiff has had an opportunity to take discovery. *See, e.g.*, *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303-304 (2d Cir. 2003); *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000).

Instead, as the Trustee advised Services yesterday, the Trustee proposes — and respectfully requests that this Court order — that Services' motion (if Services decides to press forward rather than devote its efforts to a prompt trial) be scheduled on the following terms, affording the expedition Services claims it needs while providing the discovery necessary for the development and determination of the factual issues in dispute:

- Services will file its motion and any supporting papers by October 20, 2017;

- Services will produce all requested discovery on a rolling basis and no later than October 30, 2017, and will make its witnesses and personnel available for deposition as reasonably requested[1];

- The Trustee will file its responding papers on or before November 6, 2017; and

- Services may reply on November 10, 2017.

Separate and apart from the schedule set by the court with respect to Services' proposed motion, we respectfully request that the Court set a trial date for later November or early December so that a final judgment on the merits can be obtained without undue delay.

We look forward to the opportunity to discuss these matters with the Court and answer any questions it may have at the conference scheduled for October 18, 2017.

Respectfully submitted,

/s/ Edward A. Friedman

Edward A. Friedman

cc: Counsel of Record (via ECF)

---

[1] Because the discovery sought by the Trustee will not delay adjudication of Services' motion, there is no basis for Services' suggestion that discovery should only be permitted if the Court extends the date on which an Event of Default would be effective. Indeed, the Second Circuit has made clear that courts cannot toll or extend indenture cure periods because that would amount to a re-writing of the parties' agreement. *See Metropolitan Life Ins. Co. v RJR Nabisco, Inc.*, 906 F.2d 884, 889-890 (2d Cir. 1990).