

**EDWARD A. FRIEDMAN**
efriedman@fklaw.com
212.833.1102

October 20, 2017

BY ECF

Hon. Jesse M. Furman
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Centre Street, Room 2202
New York, NY 10007

        Re:    *U.S. Bank National Association v. Windstream Services, LLC*,
                  Docket No. 17 Civ. 7857 (JMF) (S.D.N.Y.)

Dear Judge Furman:

        We represent plaintiff-counterclaim defendant U.S. Bank National Association, solely in its capacity as indenture trustee (the "Trustee") for the 6 3/8% senior notes due 2023 (the "Notes") issued by Windstream Services, LLC ("Services"). We write in accordance with Your Honor's instructions during the October 18 conference to submit a letter brief addressing whether the Court has the authority to stay the running of the cure period (currently set to expire on November 20) through the end of the trial (scheduled to commence on December 5). Counterclaim defendant Aurelius Capital Master, Ltd. ("Aurelius") joins in the Trustee's position and in the final section of this letter offers some comment on Services' letter to the Court of earlier today.

        We respectfully submit that the Court does not have the authority to stay the running of the cure period. The same considerations, as well as due process, should preclude the Court's setting of an earlier trial date so as to adjudicate the case by November 20. Such a schedule would severely prejudice the Trustee and the Noteholders and reward Services for the delays it has caused. Nonetheless, the Trustee proposes below a third approach, which would allow trial to proceed as presently scheduled while clarifying (by court order) that any Notice of Acceleration would not become effective until an adjudication on the merits.

**Lack of Authority to Stay the Cure Period**

        In *Metropolitan Life Insurance Co. v. RJR Nabisco, Inc.*, 906 F.2d 884 (2d Cir. 1990), the U.S. Court of Appeals for the Second Circuit unequivocally ruled — subject to one exception not applicable here as discussed below — that the Court may not re-write an indenture to extend or toll a cure period. The Second Circuit explained that the parties' intention as expressed in the terms of the indenture is paramount, and that where "the parties have expressly agreed that the availability of a cure period shall be temporally limited, the court does not give effect to the parties' intention by removing the time limitation." *Id*. at 890.

The Hon. Jesse M. Furman — - 2 -   October 20, 2017

There, the Second Circuit reversed the decision by the District Court to toll the cure period pending adjudication of the merits of a default notice because in doing so "the court plainly departed from the express terms of the indentures." *Id.* at 889. The Second Circuit ruled that "contract provisions specifying 60-day periods mean 60 days rather than 60 days plus an additional period calculated by the length of the chancellor's foot." *Id.* at 891. Indeed, the Second Circuit stated, "the 'practical' resolution sought by the district court . . . was not authorized by any body of applicable law." *Id.* at 890.

The Second Circuit's ruling in *Metropolitan* applies directly here. Even if this Court believes it would be equitable to extend or toll the cure period, the Court does not have authority to do so. In the words of the Second Circuit, tolling of the cure period pending adjudication of the merits of the default notice would be a plain departure from the express terms of the Indenture. *Id.* at 889. Indeed, the Second Circuit's holding applies with even greater force here. In contrast to *Metropolitan*, where the District Court had (erroneously) given the issuer the "opportunity to cure" beyond the contractually prescribed cure period, Services has admitted that it cannot cure the default. (Counterclaim ¶17.)[1]

The Second Circuit in *Metropolitan* contemplated only one possible exception to the rule that a borrower cannot extend the cure period for which it bargained:

> [W]hen the district court is presented with a claim for adjudication of the merits of the default notice and/or a demand by the lender for discovery, it should not allow either party to take action that would *unilaterally* vary the contractual terms.

906 F.2d at 891 (emphasis added). The key word here is "unilaterally." The Second Circuit is not saying that any discovery requested by a lender provides a basis for tolling the cure period. Rather, the question is whether the borrower could have adjudicated the dispute and/or effected a cure within the contractually prescribed period but for the discovery request. As the Second Circuit explained, the issuer "assumes the risk that the cure period will expire before a decision is rendered." *Id*. In *Metropolitan*, however, the lender sought discovery lasting four months, well in excess of the 60- and 90-day cure periods. *Id.* at 887. It would be reasonable to portray

---

[1] It is important to note that the error by the District Court in *Metropolitan*, which resulted in the reversal by the Second Circuit, was that the District Court failed to properly consider the terms of contract by, instead, conducting a standard preliminary injunction analysis, *i.e.*, the likelihood of success on the merits and irreparable harm. The Second Circuit reversed the District Court's analysis and holding because the District Court lacked the power to rewrite the terms of the indenture — which expressly limited the cure period to a certain number of days — even if enforcement of the contractual terms resulted in irreparable harm. However, *Metropolitan* certainly does not stand for the proposition that a court has authority to toll a cure period *absent* a showing of irreparable harm. The District Court's decision in *Metropolitan* discussing the standard preliminary injunction factors is at 716 F. Supp. 1526, 1529-31 (S.D.N.Y. 1989).

The Hon. Jesse M. Furman                - 3 -                    October 20, 2017

such discovery as *unilaterally* precluding a cure after adjudication, since it would have that preclusive effect no matter how expeditiously the borrower conducted itself.

The present case is the diametric opposite. Here, but for its own actions, Services would have been able to obtain a judgment during the cure period even allowing for the Trustee's requested discovery. Had Services initiated suit promptly after receiving the notice of default, and pursued the case expeditiously, it could have obtained a ruling before the cure period ended.

Services simply chose not to do so, instead manufacturing the very timing problem it now seeks to use to prejudice the Trustee and the Noteholders. Although it expected the notice of default weeks before it was received,[2] Services did not bring suit until eight days after it received the notice, September 29. Plainly concerned that *Metropolitan* was binding precedent in this Court, Services instead brought suit in Delaware rather than in New York where the parties had consented to jurisdiction. Although the Trustee was not served until October 2, within two days it removed the Delaware action to federal court and filed a fully briefed motion to dismiss for lack of personal jurisdiction. That same day, we wrote to Services' counsel, inviting them to discuss scheduling with us, an invitation they ignored. Services did absolutely nothing for the next nine days. Only after the Trustee commenced this action on October 12, did Services withdraw the Delaware action and file an Answer and Counterclaims. Despite Services' conclusory claim that the mere pendency of this litigation for a few weeks past the cure period will pose an existential threat, it filed only a one-page motion for preliminary relief in the Delaware action, and it filed no motion papers here. The Trustee again took the initiative and on October 16 advised Services of the discovery the Trustee would require if Services intended to seek expedited relief and requested that the documents be produced within 20 days. Services flat out refused this request and asked this Court to preclude or delay discovery.

Instead of expediting its litigation efforts, Services — with the help of the same counsel in this action and with no advance notice to the Trustee — has launched a complex series of exchange offers and consent solicitations under the Indenture and several other substantially identical indentures for which U.S. Bank is also Trustee.[3] This occurred just hours after our conference with the Court two days ago. Services announced it was offering substantial payments to induce holders of *other* series of Services' notes (i) first to vote to waive, for those other series, the very covenant violations at issue here and (ii) then to exchange their notes of those other series for the series of Notes at issue here in order to vote

---

[2] *See* Counterclaims ¶¶ 54, 57 (admitting that, in early August 2017, Services became aware of market rumors that Aurelius was acquiring Services' debt and intended to issue a Notice of Default related to the spin-off).

[3] The Trustee reserves all rights with respect to the foregoing, and notes only here that such efforts do not constitute any basis for augmenting the cure period under *Metropolitan*.

The Hon. Jesse M. Furman	- 4 -	October 20, 2017

*a second time* on a similar waiver by the series of Notes now before the Court.[4]  The extent of the payments offered and the documentation prepared by Services belie its contention that the defaults alleged in this case have been manufactured and that those defaults reflect the concerns of no noteholders but Aurelius.

Under *Metropolitan*, a borrower is *not* allowed to run out the clock, forum shop, avoid or delay scrutiny, and then throw itself on the mercy of the Court to the prejudice of the Trustee and the Noteholders, especially where Services admits it cannot cure the alleged defaults.  There was no such admission in *Metropolitan*.

**Suggested Clarification and Resolution**

In both its prayer for relief in its Counterclaims and in its now-withdrawn Delaware motion for a preliminary injunction, Services asks that the Trustee and Aurelius be enjoined from declaring an Event of Default by reason of the September 21 Notice of Default delivered by Aurelius and from taking other actions based on the breach set forth in the Notice.  And, we understood Services' counsel to represent to the Court on October 18 that Services will (allegedly) suffer irreparable harm if the Trustee or Aurelius declares an Event of Default or serves a Notice of Acceleration after the cure period has run, *i.e.*, after November 20, 2017.  To address these concerns, we are amenable to a Court order clarifying that the effect of any notices of acceleration that may be delivered after the cure period would be conditioned on an adjudication on the merits, and we would be prepared to present a form of order so providing.

After this letter was substantially prepared, we received Services' letter of today to the Court, saying that Services' concern is not with any steps that the Trustee or Aurelius might take — such as declaring an Event of Default or serving a Notice of Acceleration — but rather with the expiration of the cure period itself.  Services now requests a tolling of the cure period.  For the reasons set forth above, we respectfully submit that such relief should not be granted, and that Services has not even attempted to make the showing required for such relief.  We believe the kind of clarification order described herein would address the purported harm Services has alleged will happen.  But if Services does not share this view, then the best solution may be for Services to make a proper motion — which it could have filed three weeks ago and which Services' counsel offered on October 18 to file — by October 24 in this Court setting forth the injunctive relief it seeks and the legal and factual bases for it.

**Aurelius Capital Master, Ltd.'s Additional Comments**

The ostensible purpose of Services' letter of earlier today was to address the straightforward question the Court raised as to the application of the *Metropolitan* decision here.  Unfortunately, Windstream also tried to color the discussion with a variety of ill-considered and *ad hominem* attacks on Aurelius, including the suggestion that Aurelius has been trying to impose "exigent circumstances" on, or otherwise cause harm to, Windstream. [ECF 19 at 3.]  That charge has no basis at all.

---

[4]  *See* http://investor.windstream.com/investors/releasedetail.cfm?ReleaseID=1044482.

The Hon. Jesse M. Furman                - 5 -                    October 20, 2017

       Far from facing any "exigency," Windstream has known for months about both the noteholdings and the legal position of Aurelius.  In its letter to the Court of October 17, 2017, Windstream said that in "early August 2017" it "became aware of market rumors that Aurelius was buying notes."  Id.  "Around the same time, [Windstream] became aware that Aurelius was acquiring these notes to attempt to call an Event of Default" and that the default "related to the Spin-Off."  Id.  Thus, Windstream has had more than enough time to address and respond to every issue Aurelius is raising.

       Moreover, when Aurelius did send its notice of default, it did so privately to Windstream and the Trustee alone, thus avoiding any premature escalation of the matter and affording Windstream the opportunity discreetly to correct Aurelius's understanding of the situation or to resolve the matter without resort to litigation.  To this day, Windstream has made no attempt to do either.

       We will not respond to the rest of Windstream's aspersions and misrepresentations concerning Aurelius, as they are irrelevant to the matter at hand, which is whether Windstream has violated its contractual commitments to its noteholders, to their great prejudice.  Windstream has offered little rebuttal but much deflection — a telling sign that it is uncomfortable with the merits of its position.

                                 \*   \*   \*   \*   \*

       We are available to discuss all of the above at the Court's convenience.

                                    Respectfully submitted,

| /s/ Edward A. Friedman | /s/ Arthur H. Aufses III |
|---|---|
| Edward A. Friedman<br>Friedman Kaplan Seiler &<br>   Adelman LLP | Arthur H. Aufses III<br>Kramer Levin Naftalis &<br>   Frankel LLP |
| *Counsel to Plaintiff U.S. Bank National Association, solely in its capacity as indenture trustee for the 6 3/8% Senior Notes due 2023 issued by Windstream Services, LLC* | *Counsel to Counterclaim-Defendant Aurelius Capital Master, Ltd.* |

cc:  Counsel of Record (via ECF)