USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/01/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                :

U.S. BANK NATIONAL ASSOCIATION,          :

                                    Plaintiff,         :           17-CV-7857 (JMF)

                               -v-                 :          MEMORANDUM OPINION
                                                :           AND ORDER

WINDSTREAM SERVICES LLC,                :

                                    Defendant.     :

------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       The question at the heart of this case, general familiarity with which is presumed, is whether Defendant and Counter-Claimant Windstream Services, LLC ("Windstream") breached the terms of an indenture agreement pursuant to which the company issued $700 million of unsecured notes. That question was precipitated by Counter-Defendants U.S. Bank National Association ("U.S. Bank") and Aurelius Capital Master, Ltd. ("Aurelius"), the latter of whom issued a "Notice of Default" to Windstream on September 21, 2017. Under the terms of the indenture agreement, service of a Notice of Default triggers a sixty-day cure period during which Windstream can either cure a default or obtain an adjudication on the merits that it did not default. Barring one of those scenarios, however, the Notice of Default ripens into an Event of Default, and noteholders are entitled to declare an acceleration of the company's debt.

       On October 17, 2017, Windstream filed a motion seeking "an adjudication" by the Court "no later than November 20, 2017," the date on which the cure period was set to expire given the September 21, 2017 Notice of Default. (Docket No. 19, at 1). The next day, U.S. Bank filed its own letter, agreeing that expedited adjudication was necessary, but insisting also that Counter-

Defendants needed discovery with respect to certain factual issues in dispute.  (Docket No. 23, at 4-5).  Later on October 18, 2017, the Court held a conference at which it adopted an expedited schedule — later memorialized in an Order, (Docket No. 36 ("Order")) — that, among other things, provided for sixteen days of discovery.  At the Court's direction, the parties subsequently filed letter briefs addressing the question of whether the Court had authority to stay or extend the cure period beyond November 20, 2017.  (Docket Nos. 26-29).  On October 25, 2017, the Court entered an Order holding that, "in light of Counter-Defendants' insistence on discovery," the Court did indeed have authority to stay the cure period for the duration of discovery.  (Order 1).  On that basis, the Court barred Counter-Defendants from "declar[ing] an Event of Default or serv[ing] a notice of acceleration prior to **December 7, 2017** (or sixteen days after November 21, 2017, the first date on which Counter-Defendants could presently declare an Event of Default)." (*Id.* at 1 (citation omitted)).  The Court indicated that an opinion explaining its decision "more fully" might follow "in due course."  (*Id.*).  This is that opinion.[1]

Significantly, the parties agree that the Second Circuit's decision in *Metropolitan Life Insurance Co. v. RJR Nabisco, Inc.*, 906 F.2d 884 (2d Cir. 1990) ("*MetLife*"), controls whether and to what extent the Court has authority to stay the cure period.  (*See* Docket No. 26 ("Windstream Ltr."), at 2; Docket No. 27 ("U.S. Bank Ltr."), at 1-4).  There, like here, the question was whether a lender — namely, RJR Nabisco ("RJR") — had defaulted on certain

---

[1] On October 30, 2017, Counter-Defendants filed a notice of appeal from the Court's October 25th Order.  (Docket No. 40).  Although "[a] notice of appeal confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal," *United States v. Ransom*, 866 F.2d 574, 575 (2d Cir. 1989) (internal quotation marks omitted), that does not preclude the Court from explaining its October 25th Order in a subsequent opinion, as it indicated it might do in the October 25th Order itself.  This is because a district court "may act in aid of the appeal" by clarifying the order from which an appeal is taken.  *United States v. Nichols*, 56 F.3d 403, 411 (2d Cir. 1995) (internal quotation marks omitted).  That is all the Court does here.

2

notes. *See* 906 F.2d at 886-87. There, like here, the terms of the parties' agreements gave the lender only a limited amount of time to "cure" any default. *See id.* at 886. Initially, the district court set an expedited briefing schedule contemplating a decision before expiration of the earliest cure period. *See id.* at 887. The plaintiff noteholders then moved for reconsideration, asserting "that they needed some four months of discovery — a period that . . . exceeded the cure periods." *Id.* The district court granted the request, but entered an order "tolling" the cure period until it could adjudicate the question of whether RJR had in fact defaulted. *See id.* at 888.

On appeal, the Second Circuit reversed. Emphasizing that the "general objective" in a contract action "should be to give effect to the intentions of the parties in entering into the agreements," the Court held that the district court had "departed from the express terms of the indentures" by "tolling the cure periods pending adjudication of the merits of the default notice." *Id.* at 889. "[C]ontract provisions specifying 60-day periods," the Court bluntly put it, "mean 60 days rather than 60 days plus an additional period calculated by the length of the chancellor's foot." *Id.* at 891. At the same time, the Court cautioned that lenders are not "entitled to take steps — such as demanding extended discovery — that will delay such a decision past the end of the cure period." *Id.* "Just as the borrower has no right to prolong the contractual cure period in order to obtain an adjudication of the merits of the default notice," the Court explained, "the lender has no right to engage in conduct that effectively shortens the period in which the borrower may cure or obtain such an adjudication." *Id.* Thus, if presented with "a claim for adjudication of the merits of the default notice and/or a demand by the lender for discovery," a district court "should not allow either party to take action that would unilaterally vary the contractual terms." *Id.* Instead, "the court should, first, assess the need for the requested discovery." *Id.* If the court concludes that discovery is warranted, it "should exercise its

3

inherent power to limit and expedite it. In addition, the court *may*, in order to protect both the right of the lender to obtain admissible evidence of default and the right of the borrower to use the full cure period to secure an adjudication, *stay the running of the cure period for such time as the lender needs for discovery*." *Id.* (emphasis added).

In light of *MetLife*, the Court plainly had authority here to stay (or, more precisely, toll) the cure period during the time allocated for discovery. Presented with *both* Windstream's "claim for adjudication of the merits of the default notice" before expiration of the cure period *and* Counter-Defendants' "demand . . . for discovery," the Court first made a determination that discovery was actually warranted. *Id.* Second, the Court exercised its "inherent power to limit and expedite" discovery, mandating that the parties promptly confer in an effort to agree upon facts that are not in dispute and, with respect to facts that are dispute, requiring Windstream to respond and make its witnesses available for deposition by November 3, 2017. (Order 2). It follows that, under the plain terms of the Second Circuit's decision in *MetLife*, the Court was empowered to "stay the running of the cure period for such time as the [Counter-Defendants] need[] for discovery" so as "to protect both the right of the [Counter-Defendants] to obtain admissible evidence of default *and* the right of the borrower to use the full cure period to secure an adjudication." *MetLife*, 906 F.2d at 891 (emphasis added). That is all the Court did in its October 25th Order.

Counter-Defendants' alternative reading of *MetLife* is unpersuasive. First, Counter-Defendants contend that the Second Circuit's general prohibition on the extension of a bargained-for cure period "applies with even greater force here" because Windstream "has admitted that it cannot cure the default." (U.S. Bank Ltr. 2). As *MetLife* makes clear, however, a borrower is entitled to the full extent of the contractual cure period *either* to cure the default *or*

4

to "obtain an adjudication of the merits of the default notice." 906 F.2d at 891. Thus, although Windstream may not be able to cure its default (if indeed there was a default), that is beside the point. Under *MetLife*, Windstream is nevertheless entitled to the full benefit of the cure period in which to seek an adjudication of the merits of the notice of default.

Second, Counter-Defendants contend that staying the cure period here would run afoul of the Second Circuit's admonition that a district court should not permit "either party to take action that would *unilaterally* vary the contract terms," (U.S. Bank Ltr. 2 (quoting *MetLife*, 906 F.2d at 891 (emphasis in U.S. Bank Ltr.)), because, "but for its own actions" in delaying this suit, Windstream "would have been able to obtain a judgment during the cure period even allowing for [Counter-Defendants'] requested discovery." (*Id.* at 2-3). That argument might have had force if the question presented here were whether the Court should toll the cure period pending a final ruling on the merits. But it lacks force with respect to whether the cure period should be tolled for the duration of time allocated for Counter-Defendants to obtain the discovery they insisted they need. That is, when the stay expires, Windstream will have no more time to seek an adjudication on the merits than it would have had in the absence of Counter-Defendants' demand for discovery. Put differently, the stay does not restore any time Windstream may have squandered before it sought to adjudicate the default in this Court; it merely ensures that *Counter-Defendants* cannot "unilaterally vary the contractual terms" by demanding discovery that "effectively shortens the period in which" Windstream is contractually entitled to seek an adjudication on the merits. *MetLife*, 906 F.2d at 891.[2]

---

[2] For similar reasons, Counter-Defendants' alternative proposal — an order "clarifying that the effect of any notices of acceleration that may be delivered after the cure period would be conditioned on an adjudication on the merits," (U.S. Bank Ltr. 4) — falls short. It would not give Windstream the full benefit of its bargain. On top of that, Windstream represents that if the Notice of Default ripens into an Event of Default, it will "face automatic cross-defaults on its

In short, the Court's Order tolling the cure period for the duration of discovery — discovery demanded by Counter-Defendants (over the objection of Windstream, no less) — does precisely what the Second Circuit envisioned and authorized in *MetLife*: It serves to "protect *both* the right of the lender to obtain admissible evidence of default *and* the right of the borrower to use the full cure period to secure an adjudication." *Id.*

SO ORDERED.

Dated: November 1, 2017
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

other indentures" and probable bankruptcy. (Docket No. 28).