# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

<table>
<tr>
<td>Aaron H. Marks<br>To Call Writer Directly:<br>(212) 446-4856<br>aaron.marks@kirkland.com</td>
<td>601 Lexington Avenue<br>New York, NY 10022<br><br>(212) 446-4800<br><br>www.kirkland.com</td>
<td>Facsimile:<br>(212) 446-4900</td>
</tr>
</table>

December 7, 2017

**VIA ECF**

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Centre Street, Room 2202
New York, New York 10007

    Re: *U.S. Bank National Association v. Windstream Services, LLC*,
       17-CV-07857 (S.D.N.Y.)

Dear Judge Furman:

  We represent Windstream Services, LLC ("Services") and write pursuant to the Court's November 30 Order -- as modified by Your Honor yesterday -- requesting the parties' views on how the litigation should proceed.

  Aurelius's gamesmanship in this matter continues unabated. Yesterday morning -- less than 90 minutes before the parties were due to file letters with the Court pursuant to the November 30 Order -- Aurelius rescinded its November 27 notice of default (the "Second Notice").[1] Aurelius's rescission completely changes how this case should proceed, and the parties had no choice yesterday but to urgently call chambers to seek an adjournment of the filing deadline for this letter and of today's scheduled hearing.[2] Then, this morning, Aurelius served Windstream with a notice of acceleration purporting to declare the 6 3/8% Notes immediately due and payable. Notwithstanding that the alleged defaults noticed by Aurelius are without merit, have been explicitly waived by a majority of holders of the 6 3/8% Notes, and are the subject of active litigation before Your Honor, Aurelius nevertheless sought to baselessly roil Windstream with a

---

[1] A copy of Aurelius's rescission notice is attached hereto as Exhibit A.

[2] Aurelius's changes in direction also come after the parties have spent substantial time meeting and conferring and preparing positional letters requested by the Court. Aurelius sent its rescission notice on December 6, the day after the parties had met and conferred on how to proceed in this case. The Second Notice was sent on the evening of November 27, after the parties had completed meeting and conferring, and only several business hours before the parties were due to file a letter with the Court on November 28.

# KIRKLAND & ELLIS LLP

Hon. Jesse M. Furman
December 7, 2017
Page 2

public declaration of an Event of Default and acceleration -- forcing the Company to publicly respond and point out to the market that Aurelius's notice is invalid and of no force or effect.[3]

Aurelius's maneuvers are undoubtedly driven by its quest to win its undisclosed and extracurricular CDS bet on Windstream's credit-worthiness. For months, Services, and this Court, have had to be responsive to Aurelius's ever-evolving strategies and claims, all aimed at triggering its CDS. This need not be countenanced any longer. This case now can, and absolutely should, be litigated in the ordinary course. Aurelius's rescission of its Second Notice obviates the need for expedited proceedings as there is no longer a time clock running on Services with respect to a 60-day notice of default. Further, as Aurelius is well aware, and as was discussed with the Court during the November 30 conference, Aurelius's counterclaims are premature as they plainly violate the "no-action" clause contained in Section 6.06(a) of the Indenture, and the counterclaims will be subject to Services' December 12 motion to dismiss on these grounds.

In light of these developments, and as discussed below, Services respectfully requests that the Court (i) order a briefing schedule for Services' motion to dismiss Aurelius's counterclaims; (ii) stay discovery until this threshold motion to dismiss is determined; and (iii) reinstate a briefing schedule for Services' motion to dismiss US Bank's claims.

In its rescission notice, Aurelius states that its withdrawal of the Second Notice is without prejudice to reissuance at any time. Knowing full well that issuing the Second Notice will cause Services to immediately seek an expedited adjudication of the alleged defaults (to meet the 60-day cure period), this creates a dynamic that would allow Aurelius to abuse process in this case. If Aurelius grows dissatisfied with the state of litigation, or if discovery is stayed pending motion practice, Aurelius will have the option of reissuing the Second Notice to Services. Such a tactic should not be tolerated.[4]

---

[3]   On December 6, Services urged Aurelius to refrain from serving a baseless notice of acceleration. *See* Exhibit B, attached hereto. Notwithstanding, Aurelius went forward this morning and publicly released such a notice. Reorg. Research article, Exhibit C, attached hereto. Services was then compelled to respond with a letter to Aurelius, which it had to file as an 8-K. Exhibit D, attached hereto.

[4]   Aurelius was criticized earlier this week by U.S. Bankruptcy Judge Sean Lane for employing sharp tactics. In *In re Oi Brasil Holdings Cooperatief U.A.*, Case No. 17-11888 (SHL), Judge Lane ruled post-trial against an insolvency trustee supported by Aurelius. In his lengthy decision, Judge Lane commented extensively on Aurelius's behavior both in the context of the case and in its conduct before the court, writing among other things, that "the strategy pursued by Aurelius in these cases is a troubling one that the Court refuses to countenance" (p. 118), that "Aurelius's actions also reflect a lack of candor before the Court" (p. 113), and that "[t]he actions of Aurelius are at odds with many of the goals of Chapter 15." (p. 116)

# KIRKLAND & ELLIS LLP

Hon. Jesse M. Furman
December 7, 2017
Page 3


I.      **Services' Motion To Dismiss Should Be Briefed and Discovery Should Be Stayed**

        Now that Aurelius has withdrawn its Second Notice, the parties no longer need to litigate this action on an expedited schedule.  There is no end of a cure period looming.  There is no need for Services to seek leave to file amended counterclaims to address the alleged defaults referenced in the Second Notice.

        It remains that Aurelius's counterclaims are premature under Section 6.06(a) of the Indenture.  In short, as to the claims asserted in Aurelius's counterclaims, there has been no notice by Aurelius to the Trustee of a continuing Event of Default, nor a written request to pursue a remedy sought by Aurelius (Sections 6.06(a)(1) and (2)), and certainly, no 60-day period has passed since such a written request to the Trustee was made (Section 6.06(a)(4)).  Accordingly, Aurelius's counterclaims are subject to dismissal.  *See RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, No. 10 CIV. 25 (PGG), 2011 WL 3251554, at *6 (S.D.N.Y. July 28, 2011) ("It is well established that 'no action' clauses bar claims by individual bondholders who fail to comply with the conditions precedent recited therein.").

        Services will file its motion to dismiss on December 12.  In light of the holidays, Services suggests a briefing schedule whereby Aurelius responds by January 10 and Services' reply is due January 19.

        Since Services' motion would dismiss Aurelius's counterclaims in their entirety, it would also be appropriate for discovery to be stayed during the motion's pendency.  Under Federal Rule of Civil Procedure 26(c), the Court has discretion to stay discovery "for good cause."  *See Boelter v. Hearst Commc'ns, Inc.*, No. 15 CIV. 03934 (AT), 2016 WL 361554, at *4 (S.D.N.Y. Jan. 28, 2016).  Here, there is more than good cause for a stay, given that: (i) the motion to dismiss goes to a threshold issue and would dismiss the case in its entirety; (ii) the motion to dismiss is demonstrably strong based on the clear language of Section 6.06 of the Indenture; (iii) Aurelius admittedly seeks broad and lengthy discovery in this case; and (iv) there would be no prejudice whatsoever to Aurelius resulting from a stay.  A stay here would be justified for several reasons and would certainly promote efficiency for the parties and the Court.[5]

*   *   *   *

---

[5]    To the extent the Court determines not to stay discovery during the pendency of Services' motion to dismiss, the parties should proceed consistent with Your Honor's standard case management plan.  The conference on December 14 would be the initial pre-trial conference.  Fact discovery would be completed by no later than April 13, 2018, and expert discovery would be completed by May 28, 2018.

## KIRKLAND & ELLIS LLP

Hon. Jesse M. Furman
December 7, 2017
Page 4

If the Court were to stay discovery pending Services' motion to dismiss, it would be unsurprising at this point for Aurelius to react by reissuing its Second Notice. Again, such maneuvering should not be tolerated. Services would again, of course, have to seek an expedited adjudication. In Services' view, the Court would be perfectly justified under such circumstances to deny Aurelius any further discovery. *See Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 891 (2d Cir. 1990) ("We can envision scenarios in which the lender would have no real need for discovery.").

## II.     Treatment of Pending Motions

The parties have reached an agreement on consent as to Services' motion for leave to amend its answer. The parties have also agreed that the time to respond to the amended counterclaims filed by Services on November 22 is suspended pending the Court's determination as to how the litigation will proceed. The parties still have a difference of views, however, as to adjudicating Services' motion for judgment on the pleadings as to US Bank's claims.

With the successful completion of the Consent Solicitations, US Bank's claims are no longer ripe. And, given that this case no longer needs to be expedited and that Aurelius's counterclaims will be subject to a dismissal motion, it is even more clear that US Bank's claims must be dismissed now.[6]

There is no basis for US Bank to remain in this case. During the November 30 Conference, US Bank's counsel Mr. Friedman attempted to explain otherwise:

> What I would like to explain is that, under the terms of the indenture, when U.S. Bank is presented with certain documentation, and in particular an officer certificate, U.S. Bank has a contractual obligation under the indenture to proceed and authenticate notes and do what U.S. Bank did in this case. But that is in no way an indication that U.S. Bank agrees to the validity of the indenture any more than Aurelius agrees to the validity of the indenture.

November 30 Conference Transcript at 6:24-7:6. Mr. Friedman's explanation is incorrect, as US Bank cannot claim that when it authenticates Notes it does not take a position with respect to them.

---

[6]     Even if Aurelius does eventually take the steps needed to satisfy Section 6.06(a) of the Indenture with respect to its counterclaims, US Bank should not be party to the case. It remains that all claims here, including the alleged Sale and Leaseback default claim, should be tried together. Trying all claims together, US Bank's claims will not ripen before the completion of the trial of the action. It is therefore appropriate that US Bank depart from this lawsuit now, rather than continue as a mooted party assisting Aurelius through the entirety of the remainder of this case.

## KIRKLAND & ELLIS LLP

Hon. Jesse M. Furman
December 7, 2017
Page 5

Section 2.02 of the Indenture provides that the Trustee shall "authenticate Notes . . . *so long as such issuance is permitted under Article Four of this Indenture and applicable law*" (emphasis added).[7]  US Bank should not be a party to and assist Aurelius throughout a trial on the viability of its issued Notes -- and seek to charge Services for its counsel's fees throughout the case.[8]  Thus, the Court should reinstate a briefing schedule for Services' motion for judgment on the pleadings, and rule on the motion once briefing is complete.

Services respectfully requests that the Court (i) order a briefing schedule for Services' motion to dismiss Aurelius's counterclaims; (ii) stay discovery until this threshold motion to dismiss is determined; and (iii) reinstate a briefing schedule for Services' motion to dismiss US Bank's claims.

Respectfully submitted,

/s/ Aaron H. Marks

Aaron H. Marks

cc:     All Counsel of Record (via ECF)

---

[7]   Mr. Friedman's suggestion that US Bank's position is no different than Aurelius's is also plainly wrong.  It is clear that Aurelius is going to seek to argue in this case that the Exchange Offers and Consent Solicitation violated Article Four of the Indenture and applicable law.  In fact, in its November 21 counterclaims, Aurelius's allegations are sharply opposed to US Bank's position:  "[T]he purported New Notes were issued in transactions that violate Section 4.09, Section 4.12 and Section 4.17 of the Indenture; the New Notes were *wrongfully authenticated*; and the issuance of the New Notes is therefore not permitted under Article Four of the Indenture."  Counterclaims ¶ 33 (emphasis added).

[8]   Services has made it clear to US Bank that it will not pay its fees incurred after November 7 relating to this case, but expects that US Bank will nevertheless seek to invoice Services for the work it is still doing at Aurelius's direction.