**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, solely in its capacity as indenture trustee of Windstream Services, LLC's 6 3/8% Senior Notes due 2023, | Case No.: 17-CV-7857 (JMF) |
| Plaintiff and Counterclaim-Defendant, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| WINDSTREAM SERVICES, LLC, | |
| Defendant, Counterclaim-Plaintiff, and Counterclaim-Defendant | |
| v. | |
| AURELIUS CAPITAL MASTER, LTD. | |
| Counterclaim-Defendant and Counterclaim-Plaintiff. | |

<u>**WINDSTREAM SERVICES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AURELIUS CAPITAL MASTER, LTD.'S COUNTERCLAIMS**</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................. 3

I.      THE INDENTURE AND THE NO-ACTION CLAUSE .................................................. 3

II.     THE NOTICE OF DEFAULT CONCERNING THE 2015 SPIN-OFF ........................... 5

III.    THE DEBT EXCHANGES AND CONSENT SOLICITATION ...................................... 6

IV.     AURELIUS FILES ITS COUNTERCLAIMS ............................................................... 7

V.      AURELIUS TAKES ADDITIONAL MATERIAL ACTIONS ......................................... 7

ARGUMENT ......................................................................................................................... 8

I.      AURELIUS'S COUNTERCLAIMS ARE BARRED, OR SHOULD BE
        DISMISSED AS PREMATURE, BASED ON THE INDENTURE'S "NO-
        ACTION" CLAUSE. ............................................................................................... 9

        A.      The No-Action Clause Serves A Critical Purpose .................................................. 9

        B.      Aurelius Has Failed To Satisfy Section 6.06(a)(i) of the Indenture. ................... 10

        C.      Aurelius Has Failed To Satisfy Sections 6.06(a)(ii) and (a)(iii) of the
                Indenture. ........................................................................................................ 11

        D.      Aurelius Has Failed To Satisfy Section 6.06(a)(iv) of the Indenture. ................. 11

        E.      Aurelius Has Failed To Satisfy Section 6.06(a)(v) of the Indenture. .................. 12

        F.      Aurelius Cannot Satisfy Section 6.06(b) of the Indenture. ................................. 13

II.     AURELIUS'S FAILURE TO COMPLY WITH THE INDENTURE'S "NO-
        ACTION" CLAUSE HAS NOT BEEN EXCUSED OR WAIVED. .............................. 13

CONCLUSION .................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................8

*Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*,
    165 F. Supp. 3d 80 (S.D.N.Y. 2016)..............................................................9-10

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*,
    985 F. Supp. 2d 612 (S.D.N.Y. 2013)................................................................8

*China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc.*,
    882 F. Supp. 2d 579 (S.D.N.Y. 2012)..............................................................14

*Jackson Nat'l Life. Ins. Co. v. Ladish Co., Inc.*,
    No. 92 CIV. 9358 (PKL), 1993 WL 43373 (S.D.N.Y. Feb. 18, 1993)...................9

*Mayor & City Council of Balt., Md. v. Citigroup, Inc.*,
    709 F.3d 129 (2d Cir. 2013)...............................................................................8

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
    65 F.3d 1044 (2d Cir. 1995)................................................................................9

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
    859 F. Supp. 743 (S.D.N.Y. 1994)....................................................................13

*RBC Capital Mkts., LLC v. Educ. Loan Tr. IV*,
    Civ. A. No. 6297-CS, 2011 WL 6152282 (Del. Ch. Dec. 6, 2011)........................9

*RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*,
    No. 10 CIV. 24 (PGG), 2011 WL 3251554 (S.D.N.Y. July 28, 2011)................8, 9

*TechnoMarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014)...............................................................................8

*Victor v. Riklis*,
    No. 91 CIV. 2897 (LJF), 1992 WL 122911 (S.D.N.Y. May 15, 1992)...................8

Windstream Services, LLC ("Services") respectfully submits this memorandum of law in support of its motion to dismiss Aurelius's counterclaims, filed on November 21, 2017 ("Aurelius's Counterclaims"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Aurelius's Counterclaims are barred, or at least should be dismissed as prematurely filed, based on the "no-action clause" set forth in Section 6.06 of the Indenture.  This clause serves as a gate-keeping mechanism as to individual noteholders who seek to pursue remedies with respect to the Notes or the Indenture, and mandates several pre-conditions that must be satisfied before an individual noteholder may bring claims.  The purpose of a no-action clause -- standard in indentures -- is to prevent individual noteholders from bringing claims against the issuer that are unworthy or that are not supported by other noteholders.  No-action clauses demonstrate the strong preference that legitimate claims be pursued by collective action through the indenture's trustee, rather than by individual noteholders.

The counterclaims filed by Aurelius, a rogue noteholder, are precisely the sort of claims to which a no-action clause is intended to apply.  Aurelius seeks, among other things, declarations that the issuance of the New Notes is null and void and that the Consent Solicitation was not effective to waive alleged defaults, specific performance of the Company's purported obligation to secure the Existing Notes equally and ratably with the New Secured Notes, and a permanent injunction against the Company taking any action to authenticate or issue New or Additional Notes.  Ironically, Aurelius claims to be enforcing Services' obligations under the Indenture, but in purporting to do so, Aurelius itself is in blatant violation of the Indenture's no-action clause.  Aurelius's Counterclaims violate the specific provisions of Section 6.06 in numerous ways:

First, Section 6.06(a)(i) requires that before a noteholder may pursue a remedy, the noteholder must first give the Trustee written notice of a continuing Event of Default with respect

to the Notes.  Here, Aurelius has failed to provide a notice of an Event of Default (nor could it at this time) with respect to the Counterclaims it asserts.  Aurelius's Counterclaims seek relief relating to alleged Indenture violations in connection with the issuance of New Notes and the Consent Solicitation.  No Event of Default has accrued with respect to these alleged violations of the Indenture.  Indeed, only as of December 7, after its counterclaims were filed, did Aurelius serve any notice of an Event of Default at all, and that notice did not relate to Aurelius's Counterclaims, but rather to the 2015 spin-off of Uniti Group, Inc. (the "2015 Spin-Off").

Second, Sections 6.06(a)(ii) and (iii) require that the noteholder (of at least 25%, which Aurelius allegedly is) make a written request to the Trustee to pursue the remedies sought, and offer the Trustee a satisfactory indemnity.  These requirements have not been met -- notwithstanding Aurelius's assertion that on November 17 it made a written request to the Trustee to pursue the counterclaims -- because, again, the matters alleged in Aurelius's Counterclaims have not become continuing Events of Default.

Third, Section 6.06(a)(iv) requires that a 60-day period pass without the Trustee having complied with the request made by the noteholder to pursue remedies (the request that Section 6.06(a)(ii) requires).  Here, even if the November 17 request made by Aurelius to the Trustee complied with Section 6.06(a)(ii) (which it did not), the required 60-day period did not pass before Aurelius asserted its claims.  Rather, Aurelius filed its Counterclaims only four days after the non-compliant November 17 request.

Fourth, similar to the 60-day period that must be provided for the Trustee to take action (Section 6.06(a)(iv)), Section 6.06(a)(v) requires that a 60-day period pass wherein the holders of a majority in aggregate principal amount of the outstanding Notes do not give the Trustee an instruction that is inconsistent with the request.  Again, 60 days have not passed since Aurelius's

non-compliant November 17 request to the Trustee, so Section 6.06(a)(v) is plainly violated. Section 6.06(a)(v) further bars Aurelius's Counterclaims because the Trustee already received a direction inconsistent with Aurelius's request to pursue remedies -- when of holders of a majority of the outstanding Notes waived the alleged defaults and expressly authorized, directed and requested that the Trustee enter into such documents and take such other actions necessary or expedient in order to give effect to, and permit, such waivers.

Fifth, Aurelius's inability to meet Section 6.06(b) also renders its counterclaims unsustainable. That section of the Indenture provides, in pertinent part, that a noteholder "may not use this Indenture to affect, disturb or prejudice the rights of another Holder of a Note." In seeking, among other things, a declaration that the New Notes are null and void, Aurelius seeks relief that would affect the rights of other holders, in direct violation of Section 6.06(b).

Aurelius's failure to comply with Section 6.06 is not excused or waived by the fact that Services had asserted a claim against Aurelius seeking a declaration that the 2015 Spin-Off did not constitute a default. Now that the Consent Solicitation has been successfully completed, and waivers as to the alleged defaults concerning the 2015 Spin-Off have become effective, Services' claim against Aurelius is dormant (and should be held in abeyance) and cannot justify Aurelius's assertion of claims that do not comply with the no-action clause.

## FACTUAL BACKGROUND

### I.   THE INDENTURE AND THE NO-ACTION CLAUSE

On January 23, 2013, Windstream Corporation (the predecessor to Services) entered into the Indenture with US Bank as Trustee. (Ex. 1[1] (Indenture).) Pursuant to the Indenture, Services

---

[1]   Citations to "Ex." refer to Exhibits to the Declaration of Aaron H. Marks, dated December 12, 2017 and submitted herewith.

issued senior unsecured notes due August 1, 2023 (the "Notes") that bear interest at 6 3/8% per annum, payable semiannually.  (Dkt. 1 ¶ 22.)

Under Section 6.01 of the Indenture, there are several circumstances that may constitute an "Event of Default", including when there is "failure by the Company or any of its Restricted Subsidiaries for 60 days after written notice by the Trustee or Holders representing 25% or more of the aggregate principal amount of Notes then outstanding to comply with any of the other agreements in this Indenture."  (*Id.* § 6.01(a)(v).)

Under Section 6.03, if an Event of Default has occurred and is continuing, the Trustee may pursue any available remedy to collect payments owed or to enforce any provision of the Notes or the Indenture.

Section 6.06, entitled "Limitation on Suits", provides for the narrow circumstances under which Holders, rather than the Trustee, may pursue a remedy with respect to the Indenture or the Notes.  Specifically, this section, commonly referred to as the "no-action" clause, provides:

> (a) A Holder of a Note may not pursue any remedy with respect to this Indenture or the Notes unless:
>
> > (i) the Holder gives the Trustee written notice of a continuing Event of Default with respect to Notes;
> >
> > (ii) the Holders of at least 25% in aggregate principal amount of outstanding Notes make a written request to the Trustee to pursue the remedy;
> >
> > (iii) such Holder or Holders offer the Trustee indemnity satisfactory to the Trustee against any costs, liability or expense;
> >
> > (iv) the Trustee does not comply with the request within 60 days after receipt of the request and the offer of indemnity; and
> >
> > (v) during such 60-day period, the Holders of a majority in aggregate principal amount of the outstanding Notes do not give the Trustee a direction that is inconsistent with the request.
>
> (b) A Holder of a Note may not use this Indenture to affect, disturb or prejudice the rights of another Holder of a Note or to obtain a preference or priority over another

4

> Holder of a Note (it being understood that the Trustee does not have an affirmative duty to ascertain whether or not such actions or forebearances are unduly prejudicial to such Holder)."

(*Id*. § 6.06 (the "No-Action Clause").)

## II.     THE NOTICE OF DEFAULT CONCERNING THE 2015 SPIN-OFF

On September 21, 2017, Aurelius sent a letter to Services (the "First Notice") indicating that it was the beneficial holder of more than 25% in aggregate principal amount of the Notes outstanding and claiming that the First Notice constituted a notice of default under the Indenture. (Dkt. 10 ¶ 58.)   The First Notice focused on an alleged default of the Indenture's Sale and Leaseback Transaction covenant (Section 4.19).  (*Id.* ¶ 59.)  Aurelius claimed that the notice of default was given under Indenture Section 6.01(a)(v), which contemplates a 60-day grace period before an Event of Default would occur.  (*Id.* ¶ 61.)  On September 28, Windstream initiated an action in Delaware seeking declaratory and injunctive relief on the basis that there was no violation of the Sale and Leaseback Transaction covenant.   On October 3, 2017 and October 12, 2017, Aurelius, by letters (each such letter, a "Direction & Indemnity Letter") directed the Trustee, US Bank, National Association ("US Bank") to commence this action, seeking a declaration that a default had occurred under the Indenture.

On October 12, 2017, US Bank initiated this action with a complaint against Services seeking, among other things, declarations that the 2015 Spin-Off constituted a Sale and Leaseback Transaction in violation of Section 4.19.   On October 13, 2017, Services filed counterclaims against US Bank and Aurelius seeking a declaration that the 2015 Spin-Off did not violate Section 4.19.  On October 25, 2017, this Court ordered that the cure period with respect to the First Notice would be stayed until December 7, 2017.

5

## III.   THE DEBT EXCHANGES AND CONSENT SOLICITATION

On October 18, 2017, Services launched two separate transactions -- debt exchanges (the "Exchange Offers") and a consent solicitation (the "Consent Solicitation") with respect to Services' senior notes, including the Notes.  (Ex. 2 (Second Supplemental Offering Memorandum) at 1; Ex. 3 (Oct. 31, 2017 8K) at 6.)

On October 31, 2017, the Company learned that based on tenders of notes in the Exchange Offers and consents delivered or expected to be delivered in the Consent Solicitation, upon early settlement of the Exchange Offers, holders representing the requisite percentage of the Notes needed to waive the defaults alleged in the purported First Notice would deliver consents to the proposed waivers and amendments described in the statement for the Consent Solicitation relating to the Notes ("Waivers and Amendments").  (Ex. 4 (Nov. 3, 2017 Press Release) at 1.)  On November 6, 2017, US Bank, as Trustee, authenticated and issued the New Notes.  (Ex. 6 (Nov. 13, 2017 8K) at 4.)  That same day, following receipt of consents from holders of a majority of the then outstanding Notes (including the New Notes) to the Waivers and Amendments, Services and US Bank executed the third supplemental indenture (the "Supplemental Indenture"), which gave effect to the Waivers and Amendments for the Notes and is binding on all holders.  (*Id.*; Ex. 5 (Third Supplemental Indenture) at 1.)  The Supplemental Indenture executed by US Bank explicitly waives any supposed default related to the allegations in the First Notice and amends the definition of "Sale and Leaseback Transaction" to make clear that the 2015 Spin-Off was not a Sale and Leaseback Transaction.  The Waivers and Amendments became effective and operative on November 6, 2017.  Pursuant to the terms of the Consent Solicitation relating to the Notes, the consenting holders -- which constituted holders of a majority of all then-outstanding Notes -- expressly authorized, directed and requested that Services and the Trustee enter into such

6

documents and take such other actions necessary or expedient in order to give effect to, and permit, the Waivers and Amendments.

## IV.     AURELIUS FILES ITS COUNTERCLAIMS

On November 21, 2017, Aurelius filed its counterclaims against Services, in which Aurelius purports to challenge the validity of the waivers obtained through the Consent Solicitation and the validity of the Exchange Offers, alleging that the Consent Solicitation and Exchange Offers violated the Indenture and the implied covenant of good faith and fair dealing.  (Dkt. 64.)

Aurelius's Counterclaims allege that it sent a direction and indemnity letter to the Trustee on November 17, 2017 directing the Trustee to pursue the claims set for in Aurelius's Counterclaims, and that the Trustee declined to follow that direction.  (Dkt. 64 ¶ 73.)  By its counterclaims, Aurelius seeks various remedies, including a declaration that the New Notes were not validly issued under the Indenture, a declaration that the Waivers and Amendments were not effective to waive the defaults alleged in the First Notice and that the Supplemental Indenture is null and void, specific performance of Services' obligations to secure the Existing Notes equally and ratably with the New Secured Notes, and injunctive relief to prevent Services from issuing New or Additional Notes under the Indenture.  (*Id*. ¶¶ 78-81.)

## V.     AURELIUS TAKES ADDITIONAL MATERIAL ACTIONS

On November 27, 2017, Aurelius, claiming to be the beneficial holder of more than 25% of the Notes, sent a letter to Services purporting to be a notice of default under Section 6.01(a)(v) of the Indenture (the "Second Notice"), alleging that the issuance of the New Notes violated Sections 2.02 and 4.09 of the Indenture.  Like the First Notice, the Second Notice is subject to a 60-day cure period.   The defaults alleged in the Second Notice significantly overlap with Aurelius's Counterclaims.  Also on November 27, 2017, Aurelius issued to the Trustee a third

Direction & Indemnity Letter purportedly directing the Trustee to assert the claims asserts in its Counterclaim.

On December 6, 2017, Aurelius withdrew the Second Notice by letter to Services. (Ex. 7(Dec. 6, 2017 Rescission Notice).)

On December 7, 2017, Aurelius issued a Notice of Acceleration, alleging that the 2015 Spin-Off had become an Event of Default and purporting to declare the Notes immediately due and payable. (Ex. 8 (Dec. 7, 2017 Letter).)

## ARGUMENT

Courts regularly dismiss actions on Rule 12(b)(6) grounds where the plaintiff has failed to meet pre-conditions to a claim prescribed by a contract, such as a no-action clause. *See RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, No. 10 CIV. 24 (PGG), 2011 WL 3251554, at *6 (S.D.N.Y. July 28, 2011) (granting 12(b)(6) motion to dismiss against the co-issuer where plaintiff holder had not complied with no-action clause); *Victor v. Riklis*, No. 91 CIV. 2897 (LJF), 1992 WL 122911, at *6 (S.D.N.Y. May 15, 1992) (emphasis in original) (granting 12(b) motion to dismiss where plaintiff holder had not complied with no-action clause).[2] Where a noteholder seeks to sue on an indenture containing a no-action provision, such provision "prohibits an individual debentureholder . . . from pursuing *any* remedy with respect to the Indenture . . . unless certain conditions have been met." *Id*.

---

[2]   As a general matter, to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 616 (S.D.N.Y. 2013). Mere "labels and conclusions" do not satisfy the need for plausible factual allegations, and a complaint may not rely on a "formulaic recitation of the elements of a cause of action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Instead, "the plausibility standard applies only to a complaint's factual allegations" and courts "give no effect at all to legal conclusions couched as factual allegations." *Mayor & City Council of Balt., Md. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013).

## I.   AURELIUS'S COUNTERCLAIMS ARE BARRED, OR SHOULD BE DISMISSED AS PREMATURE, BASED ON THE INDENTURE'S "NO-ACTION" CLAUSE

Aurelius's Counterclaims must be dismissed because Aurelius failed to comply with the prerequisites to suit set forth in the no-action clause of Section 6.06 of the Indenture.

### A.   The No-Action Clause Serves A Critical Purpose.

The purpose of a no-action clause is "to prevent individual holders of notes from bringing unworthy or unpopular actions (*i.e.*, actions which are not approved by the trustee or supported by a majority of the noteholders) against the issuer, and to ensure that all rights and remedies under the trust indenture are shared equally by all noteholders." *RBC Capital Mkts., LLC v. Educ. Loan Tr. IV*, Civ. A. No. 6297-CS, 2011 WL 6152282, at *2 (Del. Ch. Dec. 6, 2011).  No-action clauses serve an important gate-keeping role to ensure that "lawsuits affecting noteholders and issuers are only brought if there is substantial support from the noteholders as a class, and in ensuring that such lawsuits are prosecuted in the best interest of all noteholders." *Id*.  They serve to prevent a single noteholder from bringing an action in its own interest, at the expense of other noteholders - - precisely the case here.

Courts in the Second Circuit interpret no-action clauses strictly: "It is well established that 'no action' clauses bar claims by individual bondholders who fail to comply with the conditions precedent recited therein." *RJ Capital, S.A.*, 2011 WL 3251554 at *6 (quoting *Metropolitan West Asset Mgmt., LLC v. Magnus Funding, Ltd.*, 2004 WL 1444868, at *5 (S.D.N.Y. June 25, 2004)); *see also McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1050-51 (2d Cir. 1995) (noting that "no action" clauses "have been enforced in a variety of contexts in both federal and state courts") (internal citations omitted); *Jackson Nat'l Life. Ins. Co. v. Ladish Co., Inc.*, No. 92 CIV. 9358 (PKL), 1993 WL 43373, at *5 (S.D.N.Y. Feb. 18, 1993) (interpreting no-action clause "in accord with the plain meaning of its terms"); *Blackrock Core Bond Portfolio v. U.S. Bank Nat'l*

*Ass'n*, 165 F. Supp. 3d 80, 92–93 (S.D.N.Y. 2016) ("[N]o-action clauses are 'strictly construed' contractual provisions.") (discussing *Cruden v. Bank of New York*, 957 F.2d 961, 968 (2d Cir. 1992)).[3]

Section 6.03 of the Indenture provides the Trustee with the ability to bring claims as to the Notes or the Indenture collectively on behalf of the noteholders.   Section 6.06 contains the Indenture's no-action clause and explicitly outlines the steps a noteholder must take *before* filing an action on its own behalf.  *Supra* at I.  And, Section 6.06(b) prohibits a noteholder from pursuing claims that could adversely affect other holders.  *Id*.

**B.      Aurelius Has Failed To Satisfy Section 6.06(a)(i) of the Indenture.**

Under Section 6.06(a)(i) of the Indenture, a noteholder may not pursue a remedy unless the noteholder first provides the Trustee notice of a continuing Event of Default.   Under Section 6.01(a)(v), a purported violation of the Indenture will not mature into an Event of Default until "failure by the Company or any of its Restricted Subsidiaries for 60 days after written notice by the Trustee or Holders representing 25% or more of the aggregate principal amount of Notes then outstanding" to cure such violation.

Aurelius has not complied with Section 6.06(a)(i) because it has not provided -- and cannot at this time provide -- the Trustee with notice of a continuing Event of Default as to the Indenture violations it asserts in its counterclaims.  Aurelius alleges that it has complied with Section 6.06 through its Direction & Indemnity Letters on October 3, 2017, October 12, 2017 and November 17, 2017.  (*Id*. at ¶¶ 70; 73.)  But Aurelius misconstrues Section 6.06 and the defined

---

[3]       In its emergency motion to expedite its appeal to the Second Circuit, Aurelius extolled the virtues of the "vital protection[s] to Noteholders" provided by the Indenture.  *U.S. Bank Nat'l Assoc. v. Windstream Services, LLC*, No. 17-3498, Dkt. 8 at 12 (2d Cir. Oct. 30, 2017).  The No-Action Clause is one such protection, and Aurelius now seeks to ignore it.

term "Event of Default."  Under Section 6.06(a)(i), Aurelius must allege it provided the Trustee notice of an Event of Default, not merely that it provided notice of an alleged default.  Aurelius's Direction & Indemnity Letters do not constitute notice of an Event of Default under Section 6.06(a)(i) because none of the purported Indenture violations asserted in those letters had matured into an Event of Default.  Aurelius has not, and cannot, allege compliance with the first requirement of Section 6.06(a) and for that reason alone, the Aurelius counterclaims must be dismissed.

Aurelius served a notice declaring an Event of Default on December 7 (Ex. 8 (Dec. 7, 2017 Letter)) -- after Aurelius had filed its counterclaims -- but that notice did not relate to the counterclaims that Aurelius seeks to pursue here, but rather to the alleged default regarding the 2015 Spin-Off.

**C.      Aurelius Has Failed To Satisfy Sections 6.06(a)(ii) and (a)(iii) of the Indenture.**

Because an Event of Default had not occurred at the time it filed its counterclaims, Aurelius also has not alleged that it provided the Trustee a request to pursue a remedy (Section 6.06(a)(ii)) for the Event of Default or that it offered to indemnify the Trustee with respect to pursuing such a remedy (Section 6.06(a)(iii)).  While Aurelius asserts that it "directed the Trustee on November 17 to pursue this action," and offered to indemnify the Trustee, these allegations are insufficient. Because the matters complained of in the counterclaims were not Events of Default at the time Aurelius filed its counterclaims (and are not Events of Default now), Aurelius has failed to comply with Sections 6.06(a)(ii)-(iii).

**D.      Aurelius Has Failed To Satisfy Section 6.06(a)(iv) of the Indenture.**

Under Section 6.06(a)(iv), after a noteholder has made a request to the Trustee to pursue remedies (the request made pursuant to Section 6.06(a)(ii)), a 60-day period must pass without the

Trustee having complied with the request before the noteholder may pursue such remedies on its own.  Aurelius has not remotely complied with this provision.  Even if the November 17 request made by Aurelius to the Trustee to bring the counterclaims complied with Section 6.06(a)(ii) (which it did not, because there was no Event of Default at the time), the required 60-day period did not pass before Aurelius asserted its claims.  Rather, Aurelius filed the counterclaims only four days after the non-compliant November 17 request.   Accordingly, it is beyond dispute that Aurelius's Counterclaims violate Section 6.06(a)(iv).

     **E.**    **Aurelius Has Failed To Satisfy Section 6.06(a)(v) of the Indenture.**

Similarly, Section 6.06(a)(v) requires that, after a noteholder has made a request to the Trustee to pursue remedies (the request made pursuant to Section 6.06(a)(ii)), a 60-day period must pass wherein the holders of a majority in aggregate principal amount of the outstanding Notes do not give the Trustee an instruction that is inconsistent with the request.  Aurelius's Counterclaims violate 6.06(a)(v) for the very same reasons that 6.06(a)(iv) are violated -- there has been no Event of Default with respect to the matters asserted in Aurelius's Counterclaims, no request to pursue remedies with respect to such an Event of Default, and no passage of a 60-day period since the request to the Trustee.

Aurelius additionally fails Section 6.06(a)(v) because the Trustee has already received a direction inconsistent with Aurelius's request to pursue remedies.  This occurred when the holders of a majority of the Notes waived the alleged defaults and expressly authorized, directed and requested that the Trustee enter into such documents and take such other actions necessary or expedient in order to give effect to, and permit, the Waivers and Amendments.  This waiver and direction bars several of the remedies that Aurelius seeks in the Counterclaims, including its counterclaims for declarations that issuance of the New Notes is null and void and that the Consent Solicitation was not effective to waive alleged defaults.

### F.     Aurelius Cannot Satisfy Section 6.06(b) of the Indenture.

Section 6.06(b) protects against unsupported claims of an individual noteholder, providing that an individual noteholder "may not use this Indenture to affect, disturb or prejudice the rights of another Holder of a Note."  Aurelius has been pursuing a payout on its credit default swap bet for several months now, and not a single other holder has joined it in attempting to call a default. Instead, a majority of holders participated in the Consent Solicitation -- acting directly contrary to Aurelius here.  To permit Aurelius to now assert an individual claim seeking to overturn the Consent Solicitation relating to the Notes would plainly violate Section 6.06(b), because it would affect, disturb and prejudice the rights of the majority of other holders who took a position directly contrary to Aurelius in connection with the Consent Solicitation.

## II.    AURELIUS'S FAILURE TO COMPLY WITH THE INDENTURE'S "NO-ACTION" CLAUSE HAS NOT BEEN EXCUSED OR WAIVED.

Aurelius argues in its December 7 letter to the Court (Dkt. 82 at 6) that Services waived the no-action clause when it asserted a claim against Aurelius seeking a declaration that the 2015 Spin-Off did not constitute a default.  There is no basis for finding such a waiver.  Now that the Consent Solicitation has been successfully completed, and waivers as to the alleged defaults concerning the 2015 Spin-Off have become effective, Services' claim against Aurelius for declaratory relief is dormant (and should be held in abeyance) and cannot justify Aurelius's assertion of claims that do not comply with the no-action clause.  Moreover, Services' declaratory judgment claim against Aurelius relates to the First Notice, while Aurelius's Counterclaims relate to the Second Notice, making Aurelius's waiver claim even more attenuated and not supportable.

Aurelius also cites no law for its waiver proposition, and there is none.  In fact, to the contrary, courts have suggested that a no-action clause cannot be waived, even if it is not asserted. In *McMahan & Co. v. Wherehouse Entm't, Inc.*, 859 F. Supp. 743, 749 (S.D.N.Y. 1994), the court

held that a defense based on a no-action clause was not waived even though it was not raised in the defendant's 12(b)(6) motion to dismiss, explaining that a "No Action Clause defense . . . cannot be waived" even by failure to assert it. *See also China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc.*, 882 F. Supp. 2d 579, 590–91 (S.D.N.Y. 2012) ("[T]he trend in more recent cases is to hold that no Rule 12(b) defense is waived by the assertion of a counterclaim, whether permissive or compulsory.") (internal citations omitted).

Aurelius further argues in its December 7 letter to the Court (Dkt. 82 at 6) that because it directed the Trustee to pursue its counterclaims, but the Trustee has not done so, Aurelius's compliance with the no-action clause is somehow excused. This is an argument to simply ignore the no-action clause in its entirety, and it is flatly wrong. The no-action clause has very specific temporal requirements in addition to action requirements, and none of them have been met by Aurelius.

## CONCLUSION

For the reasons set forth above, the Court should grant this motion and dismiss Aurelius's Counterclaims.

Dated:  December 12, 2017
          New York, New York

/s/ Aaron H. Marks
AARON H. MARKS
JOSHUA M. GREENBLATT
STEPHEN E. HESSLER, P.C.

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**

601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:   (212) 446-4900
Email:        aaron.marks@kirkland.com
                 joshua.greenblatt@kirkland.com
                 stephen.hessler@kirkland.com

- and -

James H.M. Sprayregen, P.C.
Richard U.S. Howell
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200
Email:        james.sprayregen@kirkland.com
                 rhowell@kirkland.com

*Counsel to Defendant, Counterclaim-Plaintiff, and*
*Counterclaim-Defendant Windstream Services, LLC*