**Kramer Levin**

Arthur H. Aufses III
Partner
T  212-715-9234
F  212-715-8234
aaufses@KRAMERLEVIN.com

1177 Avenue of the Americas
New York, NY 10036

February 1, 2018

**BY ECF**

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Centre Street, Room 2202
New York, New York  10007

Re:   *U.S. Bank National Association* ("Trustee") *v. Windstream Services, LLC* ("Windstream") *v. Aurelius Capital Master, Ltd.* ("Aurelius"), 17-cv-7857 (JMF)

Dear Judge Furman:

On behalf of Aurelius, and in accordance with this Court's Rule 2.C, I respectfully request a conference at the Court's earliest convenience to address the issues set forth below concerning deficiencies in Windstream's Responses and Objections to Aurelius's (i) Interrogatories (the "Interrogatory Responses") and (ii) Requests for the Production of Documents (the "RFP Responses").  The parties have met and conferred without success.

**I.     Relevant Period for Discovery**

In the RFP Responses, Windstream objects to the Relevant Period set forth in Aurelius's document requests of June 1, 2017 through the present date, asserting, after meet and confer discussions, that Windstream would produce documents dated only from October 1 through November 20, 2017.  Based on the allegations in the parties' pleadings,  August 1, 2017 through January 5, 2018 is the minimum time frame that covers relevant events with regard to Windstream's conduct at issue in the parties' counterclaims.

With respect to the start date for the period, it was on October 18, 2017, that Windstream launched the Consent Solicitations and Exchange Offers that are the subjects of the parties' respective counterclaims.  One would expect that Windstream began considering such a significant transaction well in advance of October 18.  Based on Windstream's own pleading, Windstream took notice of Aurelius in August 2017; Windstream alleges in its Amended Counterclaims that "[i]n early August 2017, Services became aware of market rumors that Aurelius was buying notes in an effort to obtain a 25% position in one or more of the Company's series of outstanding notes …." (Dkt. No. 72 at ¶ 63).  Windstream's pleading goes on to allege that "[a]round the same time, Services became aware that Aurelius was acquiring these notes to attempt to call an Event of Default…." (*Id.* at ¶ 64).  Therefore, relevant documents concerning any exchange offer and consent solicitation would be expected to date at least from August 2017

The Honorable Jesse M. Furman
February 1, 2018
Page 2

forward. When we asked Windstream's counsel during the meet and confer session whether Windstream was prepared to represent otherwise, Windstream's counsel declined to do so. Further, although Windstream eventually offered an August 1 start date, that was only in exchange for a January 18, 2018 end date for Aurelius documents – an unreasonable request because there is no conceivably relevant conduct on Aurelius's part post-dating November 20, the date that the Trustee declined to follow Aurelius's directions, other than communications with the Trustee that Aurelius has agreed to produce.

With respect to the end date for the period, Aurelius alleges in its Amended Counterclaims that "on November 28, 2017, the Company announced another offer to exchange April 2023 Notes for New Notes" and that "[t]he Company disclosed that the conditions for consummating the new offer included a minimum participation condition." (Dkt. No. 104 at ¶ 26 n.6). Windstream announced that this exchange offer was ineffective and that no New Notes were issued pursuant to the exchange offer, in a Form 8-K dated January 5, 2018. Since Windstream commenced a second exchange offer on November 28, 2017 and did not declare that exchange offer to be ineffective until January 5, 2018, relevant documents and communications concerning Windstream's exchange offers, including communications with noteholders, would be dated at least through January 5, 2018.

## II.     Opinion of Counsel

Windstream objects to (i) producing any "'records, certificates, and documents' that [Windstream] provided to Kirkland & Ellis LLP in connection with Kirkland & Ellis LLP's issuance of the Opinion of Counsel" (RFP No. 25), and (ii) identifying any persons who "reviewed the 'records, certificates, and documents' that … Kirkland & Ellis LLP considered in delivering the opinions set forth in the Opinion of Counsel." (Interrogatory No. 11). This objection is meritless.

The Opinion of Counsel states that Windstream's counsel reviewed "such other records, certificates and documents as [they] have considered necessary or appropriate in order to deliver the opinions set forth herein." Windstream delivered the Opinion of Counsel to the Trustee, and the Trustee apparently relied on the Opinion in authenticating the New Notes. Notably, the Third Supplemental Indenture states that Windstream delivered the Opinion of Counsel to the Trustee in connection with supplementing the Indenture. Therefore, Windstream has put the Opinion of Counsel into issue and should provide discovery concerning that Opinion. *See In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (disclosure proper "when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion"); *Windsor Sec., LLC v. Arent Fox LLP*, 2017 WL 3446992, at *4 (S.D.N.Y. Aug. 11, 2017) ("[A] party is deemed to have waived attorney-client privilege or work-product protection … where a party affirmatively places the subject matter of its own privileged communication at issue in the litigation, so that invasion of the privilege is required to determine the validity of a claim or defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information.") (citations omitted). Disclosure is proper as to both the substance of the Opinion, as well as all

The Honorable Jesse M. Furman
February 1, 2018
Page 3

communications by the client to the attorney pertaining to matters addressed by the Opinion. *In re Omnicom Grp., Inc. Sec. Litig.*, 233 F.R.D. 400, 413-14 (S.D.N.Y. 2006) ("[I]f the substance of the opinion—whether privileged or not—must be produced, so too must any otherwise privileged communications that would be needed to judge its provenance and reliability.").

Even putting aside the issue of waiver, Windstream has seemed to suggest that documents provided to Kirkland & Ellis by Windstream in connection with the Opinion of Counsel are automatically privileged. Analyses and/or evaluations that Windstream may have prepared and/or provided to counsel in connection with the Opinion, including for example any quantitative analysis concerning the ability of Windstream to incur indebtedness pursuant to the Indenture, would qualify not as legal advice but rather as non-privileged information responsive to RFP No. 25.

### III. Agreements With and Compensation Paid to Citigroup and Global Services

In the RFP Responses, Windstream refuses to produce any agreements—related to the Exchange Offers or Consent Solicitations—between Windstream on one hand, and on the other hand either Citigroup Global Markets, Inc., Windstream's dealer manager in connection with the Exchange Offers and Consent Solicitations, or Global Bondholder Services Corp., the exchange agent. (RFP Nos. 3-4). Windstream also objects to producing any documents identifying the compensation that the company paid to Citigroup and Global Services in connection with the those transactions. (RFP Nos. 9-10).

Information concerning agreements between Windstream and Citigroup or Global Services or concerning compensation paid to these entities, including the nature and amount of fees paid to these entities, bears on among other things the credibility of Citigroup and Global Services as witnesses, and thus should be produced. In addition, the agreements are likely to provide relevant evidence concerning the purpose of the transactions and the scope of the work that Citigroup and Global Services performed. Windstream should therefore produce non-privileged documents in response to RFP Nos. 3, 4, 9, and 10. *See Mendenhall v. Am. Booksellers Ass'n., Inc.*, 1990 WL 422415, at *2 (S.D.N.Y. May 1, 1990) (permitting deposition questioning of third party witness regarding compensation paid by defendant; the witness's compensation was "germane to the loyalty he may feel toward the organization and hence to potential bias," and "it is the magnitude and not merely the fact of such compensation that would bear on credibility").[1]

Respectfully yours,

/s/ Arthur H. Aufses III

Arthur H. Aufses III

cc:   All counsel of record (via ECF)

---

[1] By separate letter, Aurelius will be raising issues concerning Windstream's confidentiality designations with respect to deposition testimony and documents previously produced.

KRAMER LEVIN NAFTALIS & FRANKEL LLP