**KRAMER LEVIN**
1177 AVENUE OF THE AMERICAS
NEW YORK, NY 10036
PHONE (212) 715-9100
FAX (212) 715-8000
WWW.KRAMERLEVIN.COM

**ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP**
1801 K STREET, N.W., SUITE 411L
WASHINGTON, D.C. 20006
PHONE (202) 775-4500
FAX (202) 775-4510
www.robbinsrussell.com

**ARTHUR H. AUFSES III,**
PARTNER
PHONE (212) 715-9234
FAX (212) 715-8234
AAUFSES@KRAMERLEVIN.COM

**William J. Trunk**
PHONE (202) 775-4517
WTRUNK@ROBBINSRUSSELL.COM

February 16, 2018

# UNSEALED MARCH 19, 2018

**BY ECF**

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Centre Street, Room 2202
New York, NY 10007

    Re:    *U.S. Bank National Association v. Windstream Services, LLC v. Aurelius Capital Master, Ltd.*, 17-cv-7857 (JMF) (S.D.N.Y.)

Dear Judge Furman:

On behalf of Aurelius, we write because Windstream's designations of certain discovery materials as "confidential" violate the requirements of the Confidentiality Order. [Dkt. No. 34].

More specifically, Windstream has to date improperly designated as confidential all except a handful of the internal documents that Windstream produced, as well as all except two of the Windstream-produced documents marked at depositions. The documents designated confidential even include public documents—for example, applications to state regulatory authorities that are available on the regulators' websites and SEC filings. Thus, the process by which Windstream made these designations was not proper. In addition, the Trustee and we took the depositions of three Windstream executives, yielding a total of about 460 pages of transcript; Windstream designated 293 pages as confidential. After meet-and-confer discussions, Windstream still claims that 219 pages of testimony and related documents were confidential. This still is impermissibly broad.

As explained below, we ask the Court to strike the confidentiality designations of the deposition testimony of Windstream's witnesses and the exhibits used in those depositions. We ask the Court to address only these materials, because these documents and testimony excerpts are most likely to be offered as evidence at trial and thus deemed to be judicial documents to which public access is presumed. We ask the Court to address these issues now, because

Windstream is soon expected to begin producing documents concerning the Exchange Offers and Consent Solicitations, and if the requirements of the Confidentiality Order are made clear now, we hope that further confidentiality disputes and any attendant delay of the proceedings during the next phase of discovery will be avoided. Under Rule 2.C of this Court's Rules, we respectfully request a conference with the Court to address this dispute.

**The Governing Standard:** Under the Confidentiality Order, discovery material is "Confidential" only if it "contains confidential business, commercial, financial, or personal information," and if the "public disclosure of" that information "is either restricted by law or could, in the good faith opinion of the producing person, adversely affect a person's privacy obligations or policies, business, commercial, financial, or personal interests" (Order ¶ 2). That definition is consistent with the governing law. "[I]mplicit in the notion of 'confidential business information' is something beyond the mere fact that the particular datum has not previously been made available to the public." *Salomon Smith Barney, Inc. v. HBO & Co.*, 2001 WL 225040, at *3 (S.D.N.Y. Mar. 7, 2001); *see also Turick by Turick v. Yamaha Motor Corp., USA*, 121 F.R.D. 32, 35 (S.D.N.Y. 1988) ("Discovery must take place in public unless compelling reasons exist for denying the public access to the proceedings."). When confidentiality designations are challenged under an existing confidentiality order, the producing party must demonstrate "good cause" for its designations. *Schiller v. City of New York*, 2007 WL 136149, at *5 (S.D.N.Y. Jan. 19, 2007) ("good cause … exists when a party shows that disclosure will result in a clearly defined, specific and serious injury.") (internal citation omitted); *see also In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) ("The party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection . . . .").

**Windstream's Document Designations:** Windstream's overbroad designation of documents as confidential is clearly improper. *Cf. United States v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383, 396 (S.D.N.Y. 2016) (a party "may only designate documents within its production as confidential after making a good faith determination that there is a legitimate basis for a confidentiality designation") (quoting *Houbigant, Inc. v. Dev. Specialists, Inc.*, 2003 WL 21688243, at *4 (S.D.N.Y. July 21, 2003)). In Exhibit A, we explain why supposedly confidential deposition exhibits, many several years old and otherwise containing stale and/or public information—for example public regulatory filings—are not genuinely confidential. *See* Exs. E-JJ (designated exhibits). As an example, Windstream designated as confidential the master lease related to the transaction at issue, despite it being publicly filed with the complaint in this action, *see* Ex. CC. Documents of this type and already in the public domain are not confidential. *See Horner v. Cummings*, 2015 WL 4590959, at *13 (M.D. Pa. July 29, 2015) ("It would not be fair … to allow a confidentiality designation on documents that are already in the public domain."), *rev'd in part on other grounds*, 2015 WL 13613261 (M.D. Pa. Oct. 27, 2015).

**Windstream's Deposition Designations:** Windstream's deposition designations likewise do not meet the governing confidentiality standard. In Exhibit A, we explain why Windstream's designated testimony is not genuinely confidential. We also append the full transcript of each deposition for context, with portions that have been designated as confidential

highlighted. *See* Ex. B (Gunderman); Ex. C (Eichler); Ex. D (Fletcher). Here, we point to a few examples in each deposition to illustrate Windstream's improper approach.[1]

- Bob Gunderman Deposition: Windstream designated 12 pages in which Mr. Gunderman describes his role in the sale-leaseback transaction (the "Transaction"), the way in which financial advisors became involved, and his understanding of certain indenture covenant issues. *See* Ex. B, 14:13-20:5; 20:11-25:17; 25:24-26:5. Windstream argues that the Transaction was "ground-breaking," and that disclosure of this information could competitively harm the company by leading competitors to copy the structure or otherwise harm Windstream if analysts opine that the Transaction was not structured properly. The testimony at issue says nothing about the Transaction structure other than how it relates to the Indenture, so contrary to Windstream's assertions, the testimony does not disclose anything commercially sensitive. Even if the testimony did address the Transaction's structure, the Transaction occurred in 2015 and Windstream has discussed the Transaction publicly on countless occasions. *See Todd v. Tempur-Sealy Int'l Inc.*, 2015 WL 1006534, at *4 (N.D. Cal. Mar. 6, 2015) ("[B]ecause the information [at issue] is already available to the public and competitors, Defendant has failed to show that any particularized harm will result from disclosure of the information.").

- John Eichler Deposition: Windstream designated as confidential testimony that merely identifies EY (formerly Ernst & Young) as the firm that performed the valuation of the leased property. *See* Ex. C, 98:10-21; 99:9-17. Windstream contends that disclosure of EY's name could somehow harm Windstream by leading analysts to believe that Windstream did not ask EY to do enough with respect to the Transaction. But the designated testimony nowhere suggests that EY's analysis was the only work performed on this issue, and even if it were, Windstream has no basis for keeping that fact secret.

- John Fletcher Deposition: Windstream designated as confidential nine pages of testimony concerning how the transferor subsidiaries generally enter into subleases with third parties for the leased property. However, the designated testimony does not discuss the terms of any specific sublease. *See* Ex. D, 138:15-146:19.[2]

---

[1] Moreover, because portions of the designated testimony only confirm what is in Windstream's Objections and Responses to U.S. Bank's and Aurelius's Requests for Admissions ("RFAs") and Interrogatories ("Interrogatories"), attached here as Exhibits KK and LL, such designations are inappropriate. The responses to the RFAs and Interrogatories which provide similar information as certain designations are referenced in Exhibit A.

[2] The parties have met and conferred extensively, and although the parties narrowed their disagreement, Windstream has still over-designated testimony and documents. Therefore, we informed Windstream's counsel that we would seek a conference with the Court. In accordance with this Court's Rule 7.C.ii, we are delivering by CD to Chambers both an unredacted version of this letter and its exhibits, together with a version that highlights the portions which we seek to redact. Along with this letter, we have filed a motion seeking leave to file redacted versions of this letter and the exhibits.

        Respectfully yours,

        /s/ Arthur H. Aufses III  /s/ William J. Trunk

        Arthur H. Aufses III   William J. Trunk

Encl.

Cc: All counsel of record (via ECF)