ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP

1801 K STREET, N.W., SUITE 411 L
WASHINGTON, D.C. 20006
PHONE (202) 775-4500
FAX (202) 775-4510
www.robbinsrussell.com

Lawrence S. Robbins                                                                                                                                              (202) 775-4501
lrobbins@robbinsrussell.com

July 11, 2018

**BY ECF**

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Centre Street, Room 2202
New York, NY 10007

      Re:   *U.S. Bank National Association v. Windstream Services, LLC v. Aurelius Capital Master, Ltd.*, 17-cv-7857 (JMF) (S.D.N.Y.)

Dear Judge Furman:

      Counterclaim-Defendant/Counterclaim-Plaintiff Aurelius Capital Master, Ltd. ("Aurelius") respectfully submits this letter in response to the Court's June 29, 2018 order directing the parties to submit objections to each other's witness affidavits. *See* Dkt. 176. Aurelius hereby objects, on relevance grounds, to the entirety of the McCarty affidavit submitted by Windstream.

      The McCarty affidavit purports to rebut the Garcia affidavit submitted by Aurelius. But, as the parties' recently filed Conclusions of Law show,[1] both Garcia's and McCarty's expert testimony is irrelevant. Only a narrow and pure question of law now divides the parties: Did the New Notes constitute "Permitted Refinancing Indebtedness" under the Indenture, notwithstanding that their issuance increased Windstream's indebtedness by $40 million and (as the parties agree) that additional debt was *not* incurred to pay accrued interest, transaction costs, or a premium? *See* Dkt. 184 (Aurelius Opp.) ¶¶ 8-36. Aurelius says no. Windstream says yes. Regardless who is correct, neither Garcia nor McCarty sheds any light on that single, dispositive question of law.

---

[1] Aurelius and Windstream submitted Proposed Findings of Fact and Conclusions of Law on June 15 (Dkt. 159, 160, 165), and oppositions to each other's Conclusions of Law on June 29 (Dkt. 178, 180, 184). All capitalized terms herein have the same meaning as in Aurelius's submissions.

The parties have agreed from the outset that none of the $40 million increase in indebtedness was incurred to pay accrued interest or transaction costs. As for premium, Aurelius contends that there was none. Dkt. 160 (Aurelius PFFCL) ¶¶ 103-112; Dkt. 184 (Aurelius Opp.) ¶¶ 13-15. Even so, on June 15, Aurelius submitted the Garcia affidavit as a precaution against the possibility that Windstream might, in its own June 15 filing, argue that all of the additional $40 million of debt was incurred on account of a premium. Aurelius proffered Garcia to demonstrate that, *if* Windstream were to claim that there was a $40 million premium, such premium was neither "necessary" nor "reasonably determined" (as the definition of PRI requires). McCarty attempted to rebut that testimony, though he likewise believes that Windstream did not provide a premium in the New Note Exchange Offers. *See* McCarty Aff. ¶¶ 8, 59; *see also* McCarty Dep. at 126:20-127:1.

Garcia's and McCarty's opinions are now moot. Windstream has *not* argued that the $40 million increase in indebtedness was on account of a premium. On the contrary, Windstream has repeatedly and emphatically insisted that it provided no premium whatsoever—or, at the very most, a "nominal" premium nowhere approaching $40 million. Dkt. 184 (Aurelius Opp.) ¶ 13 (collecting sources); *id*. at ¶¶ 31-36.[2] Thus, no matter which of Windstream's shifting positions one credits, the parties agree that little or none of the $40 million increase in indebtedness was incurred to pay accrued interest, transaction costs, or a premium. Accordingly, we submit that there is no reason to entertain expert testimony as to whether a (non-existent or nominal) premium was "necessary" and "reasonably determined."[3]

In light of the parties' agreement that the New Note Exchange Offers did not entail any premium at all—or, in any event, a premium equal to the full $40 million in increased indebtedness—we urge the Court to rule that neither Garcia nor McCarty needs to be called at

---

[2] Windstream's June 29 opposition brief offers a half-hearted reinterpretation of one (and only one) of the numerous interrogatory responses in which Windstream forswore the existence of a premium. *See* Dkt. 178 (Windstream Opp.) at 15 n.7. In that footnote, Windstream states that it disclaimed having "*paid*" a premium only because it construed the word "pay" to connote a *cash* transfer, whereas the New Note Exchange Offers entailed the "exchanging of debt obligations." *Ibid*. This bit of revisionism strains credulity past the breaking point, particularly because Windstream has consistently and unambiguously disavowed the existence of a premium, regardless the associated verb. *See* AX-316 at 6-7 (Windstream's supplemental interrogatory answer flatly stating, "***there was not a premium incurred*** in connection with the issuance of the New Notes.") (emphasis added)).

[3] Windstream inexplicably attributes to Aurelius the contention that "the $42.1 million [w]as the 'premium' incurred in connection with the First Exchange Offers." Dkt. 178 (Windstream Opp.) at 15. Windstream cites no support for that canard, doubtless because Aurelius has consistently maintained just the opposite. *None* of the increase in Windstream's debt—not $42.1 million; not $40 million; not one penny—was incurred to provide a "premium" within the meaning of the Indenture. Dkt. 160 (Aurelius PFFCL) ¶¶ 103-112; Dkt. 184 (Aurelius Opp.) ¶¶ 13-15.

The Honorable Jesse M. Furman
July 11, 2018
Page 3

trial. Doing so would obviate needless testimony and streamline the proceedings. Stripped of those two experts, the exchange/consent portion of the trial should consume only two days (as opposed to the three-plus days currently contemplated).

Even if the Court is disinclined to exclude McCarty at this juncture, Aurelius will not call Garcia at trial. His opinions have largely been mooted by the parties' pretrial filings.

Regardless of the foregoing, Aurelius intends to call Dr. Sabry because her opinions remain germane notwithstanding the parties' agreement that Windstream did not pay a $40 million premium (or anything close to that) in the New Note Exchange Offers. But her testimony and Dr. Kan's could likewise be obviated should the Court hold (as it could on the papers) that the New Notes violated Section 4.09 of the Indenture as a matter of law. Should the Court elect to do so, there would be nothing left to try on the exchange/consent issue.

In any event, should McCarty or Kan testify for Windstream, Aurelius objects to certain aspects of their affidavits on relevance and other grounds. Those particularized objections are reflected in Exhibits A and B, respectively. Aurelius's particularized objections to the affidavits of fact witnesses Gunderman and Cheeseman are reflected in Exhibits C and D, respectively.

Respectfully submitted,

ROBBINS, RUSSELL, ENGLERT,
ORSECK, UNTEREINER & SAUBER

By: /s/ Lawrence S. Robbins
    Lawrence S. Robbins
    1801 K St. N.W. Suite 411L
    Washington, DC 20006
    Tel: (202) 775-4517
    Fax: (202) 775-4510

*Attorneys for Counterclaim Defendant and Counterclaim Plaintiff, Aurelius Capital Master, Ltd.*

cc: All counsel of record (via ECF)