UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
U.S. BANK NATIONAL ASSOCIATION, :
:
                          Plaintiff, :          17-CV-7857 (JMF)
:
                -v- :          ORDER
:
WINDSTREAM SERVICES, LLC, :
:
                         Defendant. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       As discussed at the close of trial, the parties shall appear on **July 31, 2018**, at **10:30 a.m.** for oral argument. Consistent with trial, the Court will first hear oral argument from Services and the Trustee concerning the 2015 transaction and will then hear oral argument from Services and Aurelius concerning the 2017 transactions. The Court expects to devote approximately thirty minutes to oral argument concerning the 2015 transaction and approximately one hour to oral argument concerning the 2017 transactions, but will not set formal time limits.[1]

**The 2015 Transaction**

       With respect to the 2015 transaction, counsel for the Trustee and Services should be prepared to address the following issues and questions:

- Whether a ruling in Services's favor with respect to the 2017 transactions (either on the merits or on the ground that Aurelius failed to comply with the no-action clause) would moot the parties' disputes concerning the 2015 transaction.

---

[1] The Court will not allow telephonic access to the proceedings, through CourtCall or otherwise, but is arranging for an overflow courtroom to accommodate anyone who wishes to attend in person.

- Whether there is any independent significance to the Trustee's argument that Services breached Section 4.07(a)(A) of the Indenture or whether that argument rises or falls with the Trustee's argument concerning Section 4.19.

- Does the question of whether the 2015 transaction constitutes a Sale and Leaseback Transaction, as defined in the Indenture, turn on anything other than whether the Transferor Subsidiaries leased the Transferred Assets after they were transferred to CS&L, whether pursuant to the Master Lease or pursuant to an implied lease?

- Whether Services is judicially estopped from arguing that the Transferor Subsidiaries leased the Transferred Assets based on its submissions to state regulatory authorities.

- Whether, under New York law, a valid lease can be implied in fact and not written.

- Whether the Transferor Subsidiaries had a legally enforceable duty or obligation to pay rent in connection their use of the Transferred Assets and whether the answer to that question matters for purposes of whether they leased the Transferred Assets.

**The 2017 Transactions**

With respect to the 2017 transactions, counsel for Aurelius and Services should be prepared to address the following issues and questions:

*General:*

- Whether and to what extent a ruling in Services's favor with respect to the 2015 transaction would moot Aurelius's arguments concerning the 2017 transactions.

- What precisely is the relief that Aurelius seeks and what would the implications of granting that relief be for other holders of the New Notes, whether acquired pursuant to the 2017 exchange offers or on the secondary market?

*The No-Action Clause:*

- Whether the "written notice of a continuing Event of Default" required by Section 6.06(a)(i) must relate to the basis for a subsequent suit — and, if so, whether that requirement is satisfied here in light of Aurelius's withdrawal of its notice of default with respect to the 2017 transactions.

- If the Court concludes that the No-Action Clause bars Aurelius's suit, whether it should

or must reach the merits of the parties' disputes, either to resolve Services's counterclaims or otherwise.

- Whether failure to satisfy the No-Action Clause is curable and has been cured here.

*Section 4.09*

- Whether Services is bound by its pleadings and admissions that it paid no premium and, if so, what bearing that has on the parties' arguments with respect to Section 4.09.

- Whether the 2017 transactions increased Services's "amount" of indebtedness within the meaning of the Permitted Refinancing Indebtedness clause of the Indenture.

- If so, whether the permissibility of the 2017 transactions under Section 4.09 turns on the question of whether the increase in indebtedness qualifies as "reasonably determined premium necessary to accomplish such financing" within the meaning of Section 1.01 of the Indenture.

- Whether any increase in indebtedness qualifies as "reasonably determined premium necessary to accomplish such financing" within the meaning of Section 1.01 of the Indenture.

*The Minimum Issuance Condition:*

- Whether Aurelius can challenge Services's alleged failure to meet the Minimum Issuance Condition if it did not participate in the relevant exchange offer.

- What form of notice, and given to whom, is required to validly alter a contract in this context?

SO ORDERED.

Dated: July 30, 2018
　　　　New York, New York                         _____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　JESSE M. FURMAN
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge